EX PARTE J. R. AND V. A. READHIMER.

No. 16064. Delivered May 17, 1933.
Reported in 60 S. W. (2d) 788.

The opinion states the case.

*L. G. Matthews,* of Floydada, and *Joiner & Cook,* of Plainview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—This is an appeal from the decision of the judge of the District Court of Floyd county denying bail. The same matter came before this court before the indictment of the appellants. The present matter is after indictment. On the former appeal, the evidence was meagre. On the present appeal, the testimony is far more comprehensive as to the circumstances antecedent to, surrounding and leading up to the tragedy.

The following synopsis is taken from the evidence adduced upon the hearing: The appellant, J. R. Readhimer, was for a long time a citizen of Floyd county. His family consisted of his wife, a daughter and two sons. One of the sons was V. A. Readhimer, who is also an appellant in this appeal. The reputation of the appellants was good. Grace Readhimer, the daughter, was about twenty years of age. The deceased, Stokes Campbell, was about eighteen years of age. The two had been sweethearts for a long time. After much persuasion, Grace yielded her person to Stokes Campbell in the year 1932. The relation continued until October of that year. Some weeks after the last occurrence the girl became aware of her pregnancy; at least, she became suspicious of it. Campbell proposed to get some medicine for her. He said he would marry her, but his mother would not consent to his doing so. He told her that it was too late to get medicine but he would marry her. He said that he was not going with her anyway as he had other girls, and that she might just as well go and get rid of herself; that the disgrace was upon her and not upon him as he was a man. She had gone to Amarillo to avoid the disclosure of her condition. She wrote Campbell a letter from Amarillo but received no reply. She decided to commit suicide and was preparing to do so. On the 6th of April, 1933, she disclosed these matters for the first time. She told her brother, V. A. Readhimer, who returned to his home and told his mother and finally told his father, J. R. Readhimer. There was great distress in the family, which was one of good standing in the community. It was decided by the family that there should be a wedding. This was urged especially by the mother. J. R. and V. A. Read-

himer went in their automobile to find Campbell and bring about the marriage. J. R. Readhimer had his pistol with him. They found Campbell upon the street. He was shot and killed by J. R. Readhimer. At the time of the shooting, V. A. Readhimer had hold of Campbell. Neither J. R. nor V. A. Readhimer testified. The shots took effect in the back of Campbell and in the back of his head and seemed to have produced instantaneous death. The immediate incidents of the encounter were described by some of the witnesses, notably John Eudy, who testified for the state that he and Campbell were playing a game in front of the hospital in Floydada when Readhimer appeared and said, "Come here a minute, Stokes." Readhimer had not gotten out of his car at the time. Campbell circled around the car to get in on the other side. He went around the front end. Both of the Readhimers began to get out of the car. The father got out on the east side and his son got out on the west side. The son grabbed Campbell around the waist and Campbell began to call for help. J. R. Readhimer pulled his pistol and fired while his son was holding Campbell. Readhimer fired at Campbell from the rear and while only a few feet distant from him.

In the Bill of Rights, it is said: "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." (Const. of Texas, art. 1, sec. 11.)

Before indictment, the appellants were arrested upon a complaint. On the hearing by way of habeas corpus, bail was denied, and the judgment was affirmed by this court. (See Ex parte J. R. and V. A. Readhimer, No. 16026, Opinion delivered April 26, 1933.) As stated above, the evidence upon that hearing was far more meagre than in the present instance. The appellants are now held under an indictment. As a matter of right, they are entitled to a hearing by way of habeas corpus upon the issue of bail.

In Tex. Jur., vol. 5, p. 813, it is said: "However, it is neither the policy of the law nor the legislative intent that bail shall, as a matter of law, be denied in cases of the commission of capital offenses, simply because the death penalty is authorized to be inflicted. It is certainly true that there have been and always will be cases involving any of the capital offenses, where, notwithstanding the fact that the jury is empowered to inflict the death penalty, they will not do so, and probably should not do so. The circumstances attending each crime must

be the guiding rule as to whether the offense will be punished capitally, and, of course, as to whether it is or is not bailable."

As to the meaning of "proof evident," it is said: "In defining 'proof evident' as used in the constitutional provision, numerous cases have affirmed the rule that 'bail is a matter of right unless the evidence is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that the offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered." (Tex. Jur., vol. 5, p. 817.)

To demonstrate that the "proof is evident" within the meaning of the law, as above stated, the precedents are to the effect that the burden is upon the state. See Tex. Jur., vol. 5, p. 819.

In the light of the evidence, the members of this court do not feel justified in upholding the judgment refusing to allow the appellants bail. For that reason the judgment denying bail as to both J. R. and V. A. Readhimer is reversed. It is ordered that they each be released on bail with security in accord with the law in the sum of $5,000.00 as to J. R. Readhimer and $3,000.00 as to V. A. Readhimer.

*Judgment denying bail reversed.*